LUKE BLACKMER *vs.* A. J. PHILLIPS

A *bona fide* endorsee of negotiable notes before maturity, takes them, according to the law merchant, free from all equities or drawbacks except endorsed payments.

Where the owner of land contracted to sell the same, and to secure the payment of the purchase money took negotiable notes, and afterwards and before maturity transferred said notes to a third person; *Held*, that the vendee, upon payment of said notes, was entitled to a conveyance of the land.

A creditor who buys at execution sale the interest of a vendor in a tract of land contracted to be sold, and the title of which is held as security for the purchase money, acquires only the legal title, subject to the equities of the vendee. He acquires no interest equitable or otherwise in the notes given as security for the purchase money.

(*Giles* v. *Palmer*, 4 Jones 386.)

This was a civil action, tried before *Cloud, J.*, at Spring Term, 1872, of ROWAN Superior Court.

The parties agree upon the facts as follows :

M. A. Smith was the owner in fee of a house and lot in Salisbury, and on the 10th day of October, 1868, contracted to con-

vey the same in fee to the defendant for $2400; $800 was paid in cash, and defendant executed two notes of $800 each, one payable in 12 months, and the other in 24 months, from January 15th, 1869, to secure the purchase money and was let into possession. At Spring Term, 1869, plaintiff obtained judgment against Smith and had the same docketed 15th October, 1869; execution was issued and Smith's interest in the house and lot was sold, and plaintiff became the purchaser, and took a sheriff's deed; that thereafter, and before the docketing of the judgment, M. L. Holmes became the purchaser of the two outstanding notes of $800, for full value and before maturity. Holmes had no actual knowledge of the existence of the judgment, and he bought before the sheriff's sale. He demanded payment of the notes from the defendant, who paid off the same about the — day of January, 1870, and defendant took a deed from Smith for the premises. After the rendition of the judgment plaintiff notified the defendant thereof, and notified him to pay the balance of the purchase money to him, and not to pay any part thereof to Smith. The defendant stated that he certainly would not pay any more of the purchase money to Smith, unless he would make him a sure title, and did not pay to Smith, but the whole to Holmes, as aforesaid. Holmes took a mortgage from the defendant on the premises January 6th, 1870, to secure payment of a loan, and, at the time, knew of the existence of said judgment.

The plaintiff asked for judgment against the defendant " for the sum of sixteen hundred dollars, with interest thereon from 15th of January, 1869, being the amount due the said Smith at the time of filing the judgment roll aforesaid, to be paid by a day to be named, *when* plaintiff will execute a title to defendant for the premises, and in default thereof, that said house and lot be sold for the payment of said sum of money, and interest with costs, &c., &."

Upon this state of facts, his Honor was of opinion that plaintiff could not recover, and gave judgment for defendant.

*McCorkle*, for plaintiff.

*Bailey*, for defendant, cited and relied on *Moore* v. *Rogers*, 65 N. C. 240, *Shuler* v. *Bryson*, Id. 201.

PEARSON, C. J. On the case agreed, the plaintiff insists that he is entitled to judgment; that the defendant pay to him the amount of the two notes, given by defendant to Smith, for the balance of the purchase money, or else that the house and lot be sold to satisfy the same.

On the contrary, the defendant insists, that as he has paid the amount of the two notes to Holmes, who was a *bona fide* holder, for full value and without notice, by endorsement of the notes before maturity, he has performed the condition of the contract of sale on his part, and is entitled to judgment that the plaintiff convey to him the legal estate in the house and lot.

The two notes given by the defendant to Smith, for the balance of the purchase money, were negotiable, and we see no principle on which it can be contended that a *bona fide* holder, by endorsement before maturity, had not a right to receive payment of the same. The balance of the purchase money being thus paid, we can see no principle on which it can be contended that Phillips is not entitled to have a conveyance of the legal estate, according to the title bond executed to him by Smith.

It was urged by the plaintiff's counsel, that the effect of the sheriff's deed was not only to vest in Blackmer the legal title to the house and lot, but also to vest in him the ownership of the two notes, as an incident to the land, so that an endorsement by Smith, after his title in the notes was thus divested, is void and can have no legal effect.

The two notes were negotiable, and according to the law merchant, a *bona fide* endorsee, before maturity, took them free from all equities or drawbacks, except endorsed payments. This settles the question. We are not to be understood as conceding the position that the plaintiff, by the sale and sheriff's

deed for the house and lot, acquired not only the legal estate in the house and lot, but also became the owner of the two notes, as "incident" thereto. We look upon it, in the view of considering the two notes, as the principal or primary matter, to secure the payment of which the legal estate was retained by Smith, the vendor. So the legal title in the house and lot was retained as an *incident* to secure the payment of the two notes given for the balance of the purchase money.

The effect of the contract of sale—payment of a part of the purchase money—the two notes for the balance, and bond to make title, was to vest in the vendee (the defendant) an equitable estate in the land ; in other words, in equity, Phillips thereby became the owner of the house and lot, subject to the incumbrance of paying the balance of the purchase money before he could call for a conveyance of the legal estate. So that Smith held the legal estate as a trustee, in the first place, to secure payment of the two notes, and then in trust to convey to Phillips.

As Smith held the legal estate, assuming that it was liable to sale under execution ; what did the purchaser acquire by the sale and sheriff's deed? The sheriff was only authorized to sell the lands and tenements of the defendant in the execution, that of course passed by his deed ; but how could the sale of the house and lot have the effect of passing the title to the two notes? To this interrogatory, the learned counsel could only reply " it passed as an *incident* to the land," and the land was bound from the time of the "judgment docketed," admit that the land was bound, how does it follow that the two notes passed by the sheriff's deed ? The two notes were not the subject of execution. The sheriff did not sell them, and had no power to do so. According to the case of *Giles* v. *Palmer* 4, Jones 386, the sheriff's sale passed the naked legal title, and the purchaser could get a judgment in an action of ejectment: but it is said in that case, " should the plaintiff attempt to deprive the trustee of the possession of the premises, the remedy

of the *cestui que trust* will be in a Court of equity." This
control which has been exercised by Courts of equity, accounts
for the fact that the legal title of trustees has been seldom ever
interfered with.   The widow of a trustee is entitled to dower,
and yet it is never claimed; for the reason, that an injunction
would issue.   A mortgagee dies, the land desends to the heir,
and the widow gets dower, but *the debt*, belongs to the per-
sonal representative, and upon payment to him, the heir and
widow will be decreed to make title. This is a matter of every
days occurrence, no one has ever insisted that the *debt* passed
with the land "as an *incident.*" In our case, if Smith had
died, the land would have desended to the heir, but "the two
notes" would have belonged to his personal representative,
and on payment to him, Phillips would have been entitled to
call upon the heir for a conveyance of the legal title, or accep-
ted a deed from the administrator. The idea that by a purchase
at sheriffs sale of the legal estate, Smith, the plaintiff, (who held
in trust to secure the payment of the two notes, and then in
trust to make title to Phillips,) not only got the legal estate, but
also acquired a right to the two notes for the balance of the
purchase money, is so "wide of the mark," especially when
this right is asserted against a *bona fide* holder, that we would
not seriously discuss it, except for the fact that the plaintiff is
a member of the profession, and the learned counsel who
argued the case for him, seemed to be much in earnest, although
he did not cite any case, or give any reason in support of the
position, that the two notes passed to the plaintiff, as incident
to his purchase of the legal estate. The action is for the amount
of the two notes, and not for the house and lot, except to have
it sold, if necessary, to satisfy the two notes. So the gravamen
is the right of the plaintiff to the two notes, and the matter
is not complicated by an action to recover the land upon the
legal title, and thus force the defendant into equity under the
old system; or to his equitable defense under the new mode of
procedure; thus marching directly up to the question, and

showing confidence in the position. The matter is too plain for further discussion. I will only ask a question by way of illustration. A deed is made to A, in trust to sell and pay certain creditors. A is one of the secured creditors. The estate of A in the property is sold at execution sale, does the purchaser of the sheriff's deed acquire title to the debt which is due to A, and is secured by the deed of trust?

There is no error.

PER CURIAM.                              Judgment affirmed.