## N. L. STITH *v.* JACOB LOOKABILL.

Where land was conveyed to one *in trust* for certain purposes, and afterwards upon an attachment against the trustee at the suit of one of his creditors, the land was levied upon and sold, and purchased by the plaintiff: *Held*, that the trustee had such an estate as was subject to levy and sale; and that as against the defendant who failed to connect himself in any manner with the *cestui que trusts*, the purchaser acquired a title which entitled him to the possession.

A motion to non-suit a plaintiff in the midst of a trial on the ground that his evidence does not make out a case—the defendant's counsel at the time stating that "if his Honor should overrule the motion, he had evidence to offer, showing title in himself," is an unfair and loose mode of practice, and should not be tolerated.

(*Blackmer* v. *Phillips*, 67 N. C. Rep. 340, cited and approved.)

CIVIL ACTION, to recover possession of certain real estate tried at the Spring Term, 1874, of the Superior Court of DAVIDSON county, before his Honor, *Judge Cloud.*

The plaintiff showed title from the State to one J. M. Lisle; then a deed from Lisle to one F. M. Camman; then an original attachment against Camman, which was duly levied on the premises, and after proper proceedings had thereon, a final judgment in said attachment, and a *ven. ex.* issued to sell the land. Plaintiff further showed a sale and that A. B. Stith became the purchaser, who dying *pendente lite*, willed the same to the plaintiff; also, that the defendant was in possession.

Here, the plaintiff resting his case, the defendant moved the Court to non-suit the plaintiff, on the ground that Camman did not acquire such an interest as was the subject of attachment, levy and sale under execution; the defendant stating that if his Honor should overrule the motion, he had evidence to offer showing title in himself.

His Honor sustained the motion and non-suited the plaintiff. From this judgment the plaintiff appealed.

The provisions of the deed to Camman is sufficiently set forth in the opinion of the Chief Justice.

*Bailey*, for the plaintiff, submitted the following brief:

The case for plaintiff may be viewed in two aspects.

I. Camman held discharged of the trust,

(1.) Because the *cestui que trusts* were not ascertained.

If regarded as a *latent* ambiguity it amounts to a *patent* ambiguity unless explained.

Under statute of uses it was necessary to the execution of the use that there should be a *cestui que use* in *esse*, and therefore if a use was limited to a person not in *esse*, or a *person uncertain*, the statute could have no operation. Sanders on Uses.

And although by the strict construction of the Judges, a use could not be limited upon a use and the ulterior limitation was upheld in equity by the name of a trust. Yet still the object of said ulterior limitation was a *cestui que use* whose case was not transferred into possession, and should be as certain a person as before.

An uncertain person could not sue or *subpœna*.

(2.) If it be treated as a foreign corporation (and it does not appear to have been incorporated under our laws) it is submitted that such a corporation cannot take a trust of land without a legislative license.

II. If either position be erroneous:

Camman's estate, treated as a naked legal title, was the subject of sale under execution as decided by *Giles* v. *Palmer*, 4 Jones, 386 ; *Rutherford* v. *Green*, 2 Ired. Eq., 121.

The text books impliedly state the same doctrine in the proposition that a purchaser, under an extent, holds subject to the trust as coming in *in the per* and not the *post*.

*Dillard & Gilmer*, with whom was *J. M. McCorkle*, for defendant, argued :

There is only *one* point involved.

I. Was the interest of F. W. Camman levied on and sold in plaintiff's testator's attachment (upon judgment against said

Camman personally,) such an interest as could be sold under execution?

It was not. 2 Washburn on Real Prop., 181, and cases then cited; *Bostick* v. *Keiser*, 4 J. J. Marsh, 597; *Williams* v. *Fullerton.* 20 Vermont 346.

(*a.*) At one time, under our old system, while the legal and equitable jurisdictions of our Courts were separate, it would seem such an interest was subject to execution. *Giles* v. *Palmer*, 4 Jones 386. Yet this very case, in stating that a Court of Equity would interfere and prevent the purchaser from depriving the *trustee* of possession, confirms the principle contended for above.

(*b.*) But since the establishment of our new system, the Courts sittting as Courts of both law and equity, no such rule will prevail, and *Giles* v. *Palmer*, it is submitted, is not now the law. *Moore* v. *Byers*, 65 N. C., 242. *Moore* v. *Byers* was the case of vendor and vendee of realty. The Court holds that the interest of *neither* is subject to levy and sale under execution. " The vendor holds the legal estate in trust for the vendee and is obliged specifically to perform the contract to make title, *&c.* And a levy and sale would divest him of the legal estate and would defeat the contract of the parties." To the same effect is *Blackmer* v. *Phillips*, 67 N. C. 340. See also Wash. on Real Property, 188, (marg.) " Such equitable estate in this Court is the same as the land, and the trustee is considered as a mere instrument of conveyance." Wash. on Real Prop., 181, *Cholmendely* v. *Clinton*, 2 Jo. & W., 148.

(*c.*) Courts of Equity always limit judgment levies to the *actual* interest of the judgment debtor, who in our case had *none whatever*, the land being held " for the *sole and exclusive* use" of others. *Brown* v. *Pierce*, 7 Wall. 205. Freeman on Judgments, sec. 357. A trustee cannot *confess* a judgment so as to bind the trust estate. Freeman on Judgments, sec. 545; *Hunt* v. *Townsend*, 31 (Md.) 366.

(*d.*) It is further submitted that the declaration of trust in

the deed of Lisle to Camman, being an essential and important recital in that deed, it constitutes a part of the title conveyed, and even if plaintiff could sell it, he could never deny that he held in pure trust for the *cestui que trusts* mentioned in the deed, and therefore he could show nothing beyond what he has shown, and upon his own case, he cannot recover. *Crane v. Lessees, &c.*, 6 Peters, 611 and 612.

PEARSON, C. J. Upon the motion to non-suit, the only question was, "had Camman such an estate as was subject to sale under execution by his creditors?" On this depended the right of the plaintiff, who was the purchaser, to maintain an action againt the defendant, who for the purposes of the motion, stands as a wrong-doer, without connection, either as assignee or agent, with the *cestui que trusts* for whom Camman is assumed to have held the legal estate.

Mr. Gilmer in a well considered argument admitted the general positions taken by Mr. Bailey, in respect to " uses and trusts," to-wit:

1. This case did not come within the operation of Stat. 27th, Henry 8. So the legal title was in Camman, subject to the trust, set out in the deed " for the sole and exclusive benefit of the members of a company called and known as the " Conrad Hill Gold and Copper Company," their successors and assigns forever.

2. Camman, in the Courts of law, was considered to be the owner of the land, and no notice was taken of the trust, to which he was subject.

3. Camman had power to assign the legal estate, and it could be sold under an execution against him, the purchaser taking subject to the trust, and notice being presumed.

4. Under the old system the plaintiff would have been entitled to judgment on a demurrer to the evidence.

Mr. Gilmer then " proved by the books," that although the plaintiff was in a Court of law, (under the old system,) treated as the absolute owner of the estate, still being a trustee, on the

face of the deed by which he derives title, he and his assignee, whether by his own sake, or that of the sheriff, is subject to the control of the Courts of equity, by which these *trusts estates* were upheld and treated, as the *real ownership*. See the reasoning in *Blackmer* v. *Phillips*, 67 N. C., 340.

The trustee or his assignee will be enjoined from enforcing his mere legal right in order to take possession of the land. From these premises he drew the conclusion that under our new system, the Court acting both as a Court of Equity and a Court of law, the assignee of the trustee by sale on execution will not be allowed to take judgment for the recovery of the possession of the land.

The argument is well constructed, but it fails in this: under the old system the Court of Equity only interfered by injunction to prevent the trustee or his assignee from taking possession as against the *cestui que trusts*, or their assignee or agent, but did not interfere in favor of a wrong-doer, who fails to connect himself in any way with the *cestui que trusts*. Such is the law under the new system. In our case, for the purposes of the motion to non-suit, the *cestui que trusts* are not before the Court, and the defendant stands as a wrong-doer, with-holding the possession from the plaintiff, who is the owner of the legal estate.

If Camman had brought the action, the defendant, so far, as for the purposes of the motion, as the matter now stands, would not have under the old system, entitled himself to an injunction; neither can he do so under the new system, by which the equity of the case as well as the law is administered in the same *forum*, for the plain reason that he stands as a wrong-doer, with-holding the possession from one having the legal estate, and does not in any way connect himself with the supposed *cestui que trusts*.

There is error. Judgment reversed and *venire de novo*.

We cannot even by implication give sanction to the novel practice of allowing a *motion to non-suit the plaintiff, in the midst of a trial*, on the ground that his evidence does not make

out a case ; the counsel of defendent *stating that if his Honor should over rule the motion he had evidence to offer, showing title in himself.*

By a demurrer to the evidence the defendant puts the case, which means the *exitus* issue, or end of the case, upon the sufficiency of the evidence. The judgment of the Court decides the action one way or the other. But by this novel practice the defendant has two chances to one, which is not " fair play."

When it is decided that on the trial of a State case the defendant has no right to make a motion to dismiss the proceeding and for his discharge, upon the ground that the bill of indictment was fatally defective, and there could consequently be no judgment, even if the jury should find him guilty.

We cannot tolerate this loose mode of trial. C. C. P. dispenses with the formal mode of commencing actions and of pleading, but it does not'dispense with the rules for conducting trials which have been heretofore established, as essential to the fair administration of the law. After a jury is empanneled both sides should, in the words of Lord Mansfield, " play out their cards ;" so, in our case, Lookabill is not at liberty to hold back his defense and " fish for " the opinion of the Court, upon the case made by the plaintiff by a motion to non-suit.

The established rules of practice require that he shall put himself upon that " issue " as decisive of the action.

New trial. This opinion will be certified.

PER CURIAM.                                    *Venire de novo.*