The record states that "the plaintiff's counsel in this case having abandoned the allegations made against A. J. Orr, it is adjudged that the action be dismissed as to his estate, and that his administrator recover his costs, to be taxed by the Clerk."
The following is the case sent with the record as a statement of the facts by the counsel representing both plaintiff and defendant.
Upon the trial in the Court below, John A. Young, a witness for the plaintiff, testified:
That he was a member of the firm of Carson, Young Grier, composed of R. C. Carson, John A. Young and Z. A. *Page 399 
Grier, and which firm was formed about the year 1847, for the purpose of manufacturing woolen goods at the Rock Island factory, in Mecklenburg county. That the firm continued the prosecution of said business until the winter of 1855 and 1856, when Carson died.
It required more capital to commence business with than they expected, so they borrowed more to commence with. At the death of Carson, the liabilities of the firm were about $68,000. The realty, including machinery, they estimated at about $24,000, and the assets outside of the realty and machinery, were regarded as sufficient to pay off the liabilities.
The notes sued on were given for money borrowed from Mrs. Young by Carson, Young Grier, and was a partnership debt, to prosecute the business. That he, the witness, purchased Carson's interest in 1856, from his personal representatives, and Grier's interest soon thereafter. At the time of which purchases respectively, he agreed with them respectively, to pay the debts of Carson, Young Grier. The defendant, Wriston, had been clerk and assistant book-keeper, and afterwards the book-keeper of the firm, and was familiar with the financial condition thereof. That he, the witness, and Wriston had an understanding that they would become partners before he purchased Carson and Grier's interest. It was further agreed between them, that the witness was to purchase all the property belonging to the late firm of Carson, Young Grier, including the assets outside the realty; and was to assume the payment of the liabilities of said firm, and that the defendant, Wriston, was to come into the new firm of Young 
Wriston upon these terms. That the within contract was only in regard to the realty and machinery. The defendant, Wriston, was to have one-third interest in the whole property, and they together, (Young Wriston,) were to pay the debts of Carson, Young Grier. That whenever the debts of Carson, Young Grier were presented, they were paid as provided for, by Young Wriston. That the debt sued on has not been paid, with the exception of the annual interest thereon, which was *Page 400 
regularly paid to July, 1859; the last payment of which was endorsed on the notes, in the handwriting of the defendant, Wriston, and that the payment of the interest of the notes were made to Mrs. Young, by the firm of Young Wriston, after its formation.
The plaintiff here proposed to ask the witness whether, in pursuance of the understanding between him and Wriston, as testified to, if the firm of Young Wriston paid off all, or the greater portion, or what portion of the debts of the late firm of Carson, Young Grier? Question objected to by defendant; and the objection sustained by the Court. Plaintiff excepted. The written contract between the witness and Wriston, as to the realty and machinery, was here introduced and read.
On his cross-examination, this witness stated, that the defendant, Wriston, purchased one-third, and he, the witness, had two thirds interest in the firm property, as Young Wriston. They, Young Wriston, were to pay the debts of Carson, Young Grier; as to the proportion of their respective responsibility, nothing was said.
The plaintiff was then called, and stated that he had applied to Wriston for the payment of these notes. That early in the war, the defendant, Wriston, offered to pay off these notes to the plaintiff in eight per cent. N.C. bonds, which proposition, the plaintiff declined to accept. In about three months thereafter, plaintiff again had an interview with Wriston, and agreed to receive the eight per cent. N.C. bonds in payment of the said notes, but was told that at that time he, Wriston, did not have this class of bonds, but that he had the six per cent, bonds with which he was ready to pay off the notes. Plaintiff refused to receive this class of bonds in discharge of the debt; whereupon Wriston informed him that, if he could, he would get the eight per cent, bonds and discharge these notes. This interview took place in the office of Young Wriston, the Rock Island factory, in Charlotte. On his cross-examination, *Page 401 
the witness stated, that he had sued John A. Young, Grier's estate and Mrs. Young's estate, on these notes.
The defendant, Wriston, introduced in evidence his own deposition, in which he testified: that his contract was with Young, to pay to Young one-third of the debts of the firm of Carson, Young Grier. That Young assumed the payment of the debts of Carson, Young Grier; and that he assumed the payment to Young, to the extent of one third thereof. That it was true, he had paid some of the debts of Carson, Young Grier, but he considered such payments a discharge to the same extent of his indebtedness to the said Young. That he had more than paid his indebtedness to Young.
The plaintiff asked the Court to instruct the jury: 1. That if they are satisfied from the testimony of the owner of the notes, payable by Carson, Young Grier to Mrs. Young, assented to the arrangement, as testified to by John A. Young, to the effect, that Young Wriston agreed to pay the outstanding debts of Carson, Young Grier, that such assent would be equivalent to a prior agreement; and in that respect, the agreement would in legal effect, be made to such owner of the notes.
2. That acceptance of payment of part of such debt, is evidence of such assent.
His Honor declined to give the instructions prayed for, and charged the jury substantially as follows: On the argument, the plaintiff contended, that undertaking to pay the debts was made with Carson, Young Grier, of whom Morehead was one, and that the consideration of the undertaking was the property that Wriston got from Carson, Young Grier; the defendants contended, that no contract was made with Morehead or any other creditor; and if the contract was made with Morehead, there was no valuable consideration to support it. The Court recited the whole evidence, and stated the positions taken by both plaintiff and defendant, and told the jury, that the first and second issues were questions of fact for them to decide. And as to the third issue, the Court charged, that the *Page 402 
property received by Wriston from Carson, Young Grier, was not a sufficient consideration to support a contract with Morehead; but it was a sufficient consideration to support a contract with Young Wriston.
To this charge, as well as the refusal to give instructions prayed, the plaintiff excepted, except as to that part relating to the first issue.
Upon the rendition of the verdict by the jury, as set forth, upon the following issues, to wit:
1. Did the firm of Young Wriston undertake to pay the debts of Carson, Young Grier? The jury said "Yes."
2. If they did undertake to pay such debts, with whom was this undertaking made? Answer, "John A. Young."
3. If this undertaking was made at all, was it made for a valuable consideration? Answer, "It was made for a valuable consideration."
Plaintiff moved for judgment upon the facts as found above by the jury, and those admitted by the pleadings. This motion was overruled.
The plaintiff then moved for judgment, non obstante veredicto. Motion overruled; whereupon the plaintiff again moved, that the Court would grant a new trial of the several issues, on the ground of error in the instructions given, as well as in those refused. His Honor overruled this motion, and gave judgment for defendants. From this judgment plaintiff appealed.
The case may be viewed in two aspects.
I. An incoming partner may be become liable for the debts of a previous firm, if he so agrees upon a proper consideration. Story on Partnership, sec's. 152, et. seq. and 368 et. seq; Collyer on Partnership, chap. 3, sec. 2, p. 497, et. seq. especially sec. 522, ibid sec. 916, p. 806, et. seq; Exparte Jackson, 1 Ves. Jr., 131; Ex parte Peele, 6 Ves. Jr., 602; Ex parteClowes, 2 Brown, ch. Rep. 595; Oakley v. Pasheller, 10 *Page 403 
Bligh, 548, Hart v. Alexander, 2 M. W. 484; 1 Parsons Con't. 189, 190; Hovendon on Frauds, 2 vol. 169.
Analogies if not direct authorities. Hislop v. Hoover,68 N.C. Rep. 140; Arnold v. Lyman, 17 Mass. 400; Winslow v. _____, Phil. law, 565; Schermerhorn v. _____; , 1 John's 139; Weston v. _____, 12 John's 276; Ellwood v. _____, 5 Wend. 235; Cumberland v. Codlington, 3 John's Chan. 229, at p. 254; Earle v. Crane, 6 Duer, 264; Note to Piggott v. Thompson, 3 B. . P. 149.
(1.) Agreement not affected by Statute of Frauds. Rice v. Carter, 11 Ired. 298; Cooper v. Chambers, 4 Dev. 261; Stanley v. Hendrix, 13 Ired. 86;Draughan v. Bunting, 9 Ired. 10; Ellwood v. _____ supra.
Whereas as in our case, while the promise is to pay the debt of another in form, it is such in form only. In substance, it is a promise from the incoming partner to pay the old firm a sum to be ascertained under the maxim id certum est quod by the extent of the indebtedness.
(2.) This defence should be pleaded where it exists. Lyon v. Chrissman, 2 D. B. Eq. 268; Barnes v. Teague, 1 Jones Eq. 277.
The arrangement may take effect in two ways:
(1.) Novation: whereby the old debt is extinguished, and the new accepted in substitution. Hart v. Alexander, supra.
(2.) By creating a quasi suretyship whereby a retiring partner, or old firm becomes a quasi surety to the new firm. Oakley v. Pashaller, supra.
Or as STORY expresses it:
(1.) With extinguishment.
(2.) Without extinguishment. Daniel v. Cross, 3 Ves. Jr. 277.
Whether viewed in the light of one or the other of the foregoing distinctions, quacunque via data the defendant is liable either.
(a). Upon the principle in analogy to trusts executed for the benefit of creditors, or the like — of presumed acceptance — *Page 404 
which, while not seemingly countenanced in the English Courts, is, in ours, and may be regarded as a departure. Moore v. McDuffey, 3 Hawks, 578; Ingram
v. Kirkpatrick, 6 Ired. Eq., 463; Smith v. Turrentine, 8 Ired. Eq., 185.
(b.) Or, because acceptance is presumed as a matter of law, from dealings between the creditors and the incoming partner, on the basis of the new arrangement, such as payment of interest, on the principle ofExparte, Jackson, supra.
(c). Or, upon the same evidence as a fact for the jury to draw the inference of acceptance from, as in Hart v. Alexander, supra.
The point as to the consideration seems to have been misconceived by his Honor. The consideration necessary to raise this equity, is one moving from the old to the incoming partner. That is found. Being found, no consideration is necessary, as between the incoming partner and the creditor. Daniel v. Cross, 3 Ves. Jr., 577.
Assent alone is necessary. This is proved by all the cases, as in none of them was any consideration proved as between the creditor and the incoming partner.
But if STORY'S distinction, or the one we have submitted supra be correct, we submit that there is, ex necessitate rei, a consideration even as between them:
(1.) If old debt is extinguished, that is a consideration.
(2.) If not extinguished, and the old partners, or as termed retiring partners, or as a better term, the old firm become sureties, such a change in their relation to the creditor is a sufficient consideration.
II. (1.) May not this case be regarded in equity as the declaration of a trust? As if the partnership of effects had been conveyed to the persons comprising the new firm in trust to pay the debts of the old firm. High v.Lack, Phil. Eq., 175. Is it not that substantially?
We concede that while, as a general proposition, partnership property is a fund to pay partnership debts, we do not controvert the principle that the partnership debt is not an actual *Page 405 
lien only quasi to be worked out through the equities of the partners themselves. So the firm may convey the property, and disappoint thequasi lien.
But it needs not the citation of authority to show that the sale must be to a bona fide purchaser to effect the legal result. And then such effect is given to it on the principle that between equal equities, the law shall prevail.
A sale imports, proprio rigore, an intent to divest the property from its presumptive liability to partnership debts. But can such an intention be gathered from the sale to defendant?
When such an intent is expressly negatived by the terms of the sale, and the new co-partnership — call it sale — even call it a sale for valuable consideration — when the purchaser buys, and agrees to take it and allow it to continue liable as before, cum onere, the equities are no longer equal — but that of the creditors subsisting and superior — and qui prior est tempore applies.
(2.) If a declaration of a trust, we submit that by every principle and analogy, the creditor is subrogated to the rights of the old partners. Bank
v. Jenkins, 64 N.C. 719.
Analogies. Purchaser of notes given for purchase money under an executory contract of sale. Hadley v. Nash, 69 N.C. 162; Blackmer v.Phillips, 67 N.C. 340.
Surety who pays off a secured note. York v. Landis, 65 N.C. 535.
Assignee of note secured by mortgage. Hyman v. Devereux,63 N.C. 624.
What is the true ground of this principle of subrogation? We submit that it is: When a debtor can enforce a right which, if enforced, would result beneficially to the creditor; and will not, or does not, the creditor is subrogated to such right, as it is against good conscience for a debtor, through caprice or fraud, to withhold from the creditor the benefit derivable from his right. And it is on this principle, that creditors are allowed (formerly by bill, now by supplementary proceedings) *Page 406 
to subject the choses in action of their debtor, and this independent of any contracting link, as in our case.
When property was assigned, and the assignee promised in consideration thereof to pay all the debts of a certain corporation, and there was no specification as to its creditors, nor of the amount of their dues, it was held that no such creditor could maintain an action against the assignee.Dow v. Clark, 7 Gray 198; Fairley v. Denton, 8 Barn Cress 395; 2 Man. 
Rye, 353; Lavy v. Henry (N. H.) Rep., (advance sheets.)
Where A is indebted to B, and places money or goods in the hands of C to be applied in payment of B's debt, and C promises A so to apply it, no cause of action arises to B against C until B has been notified of the arrangement and has assented thereto; and when B has so assented the prior objection of A, is discharged. Carroway v. Cox, Busb. Rep., 173; Strayhorn
v. Webb, 2 Jones, 199; Dixon v. Pace, 63 N.C. 603; White v. Hunt,64 N.C. 496; 1 Parsons on Contracts, 220, (title novation) — see particularly Lindley on Partnerships, pages 316 and 17 (marginal) and cases cited. Lee v. Fontaine, 10 Mass. 755. As to necessity of discharging the old firm and substituting the new one, Kirmon v. Kirmon, 2 Cr. and Meeson, 617; Blews v. Myatt, 5 Carr and Payne 397 (E. C. L. Rep., 24). Chitty on Contracts, 262; Lindley on Part., 362 (marginal.)
In our case there is no assent to the new arrangement on the part of the plaintiff alleged in the complaint, nor proved. On the contrary, he elects to repudiate the contracts of Young and Wriston, being his action against the old firm, and obtains a judgment against them and his indorser, which judgment is still in force.
It is settled law in England, Metcalf on Contracts 208, and in this State; no one can maintain an action before a promise unless the consideration moved from him, unless it be an action for money had and received to his use, that is, in cases where the third party, the defendant, has received money or property *Page 407 
which he has agreed to apply in satisfaction of plaintiff's debt, and this with plaintiff's assent. Of this character are all the cases in our Reports commencing with Cox v. Carroway — (note supra.) In our case the property was not received for the creditors, but was purchased. Our contract was not for the benefit of the creditors, but for that of the original debtors. 1 Smith's Leading Cases — Notes to Lampleagh v.Brathwait, 224.
There is no allegation of a demand on the part of the plaintiff before bringing this action, and no allegation that defendant was ever informed that he had these notes. This information being exclusively within the knowledge of the plaintiff, a request should have been made. Chitty on Contracts, 732.
There is no allegation of any promise to Morehead, the plaintiff in the complaint; therefore, no promise to him could be proved. There could be no complete determination of the matters in dispute without making Young a party.
When Morehead refused to substitute the firm of Young Wriston as his debtors, and Wriston paid Young the amount of this debt due to Morehead, and is thus discharged.
As to motion for new trial:
If the Court is of opinion from cases cited in the 1st section of this brief, that plaintiff could recover upon the promise so stated in the complaint, then it will not award a new trial, although there was error in his Honor's charge.
Payment of interest, by the firm of Young Wriston, is prima facie only in support of some agreement between the parties, and is no evidence of assent on the part of Morehead to the arrangement by which the new firm was to become his debtor in lieu of the old one. Lindley on Partnerships, 359.
Ratification and assent by Mrs. Young, the original creditor, would not give her indorser, Morehead, a cause of action unless he also assented.
Chitty, in his work on Bills, page 250, (marginal) says: "But even in those cases where a valid agreement has been *Page 408 
made that a bill or note shall be paid, it is effectual only between the original parties to it, and is not transferable in law, in equity, or in bankruptcy." "A guarantor is not to be treated as a party to the note guaranteed, whether the guaranty be upon the note or upon a separate paper.Rhett v. Poe, 2 How. (U.S.) 455; Story on Promissory Notes, sec. 484. A guaranty cannot be assigned; 2d McLean Rep., 103 (Home v. Kimbol.) Chitty on Contracts, 449, note 2. 2 Parsons on Contracts, 3.
Where the principal debtor has given a mortgage to the surety by way of indemnity the creditor acquires no right to resort to this bond until the principal debtor becomes insolvent, and until such insolvency the surety may discharge the indemnity. Jones v. Quinnipiack, 29 Conn. 25; 1 Hilliard on Mortgages, 246, sec. 47.
Carson, Young Grier and also Young, are accessory parties.
The briefs, on both sides, are very well prepared, and aid us very much.
The finding of the jury upon the issues is to the effect that when the defendant, Wriston, entered into the new partnership with Young, he agreed with Young that the new partnership should pay the debts of the old partnership of Carson, Young Grier; and that this promise was made upon a sufficient consideration. There is no doubt, therefore, that the defendant, Wriston, is bound to Young to perform that agreement.
The plaintiff, who is a creditor of the old firm, insists that that agreement between Young and Wriston enured to his benefit, and that by force of it, he is entitled to collect his debt out of Wriston. And whether that is so, is the question before us.
The result of the authorities is well stated in Lindley on Partnership, p. 316, as follows:
"If an incoming partner chooses to make himself liable for *Page 409 
the debts incurred by the firm prior to his admission therein, there is nothing to prevent his so doing. But it must be borne in mind, that even if an incoming partner agrees with his copartners, that the debts of the old shall be taken by the new firm, this, although binding between the partners, is, as regards strangers, res inter alios acta, and does not confer upon them any right to fix the old debts on the new partner. In order to render an incoming partner liable to the creditors of the old firm, there must be some agreement to that effect entered into between him and the creditors, and founded on some sufficient consideration. If there be any such agreement, the incoming partner will be bound by it; but his liabilities, in respect of the old debts, will attach by virtue of theagreement, and not by reason of his having become a partner."
It will be observed that the agreement must be between the new partner and the creditor, and upon a consideration moving from the creditor.
There is no pretense here that the original agreement was between the defendant and the plaintiff; but it is insisted that the fact that the new firm paid the interest to the plaintiff is sufficient. It seems, however, to be settled that that is evidence only of the agreement between the partners, and not between the new partner and the creditor. Lindley on Partnership, 359. But suppose it were evidence between the new partner and the creditor, still it would be void, for want of a consideration moving from the creditor. If there were evidence that the creditor had been induced to surrender his debt against the old firm, and to accept the new, that would alter the case. But there is no pretense of that here. Indeed, the plaintiff, so far from surrendering his debt, actually sued the old firm, and now has his judgment.
There is no error.
PER CURIAM. Judgment affirmed. *Page 410